# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 675 | **DATE** | 3/23/2000 |
| **CASE TITLE** | UAL Corp., et al  v  Mesa Airlines, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Memorandum opinion and order entered. Accordingly, defendant's alternative motion to transfer is granted and this action is ordered **transferred** to the USDC for the District of Colorado.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | number of notices | |
| X | Notices mailed by judge's staff. | MAR 2 7 2000 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | 19 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| GDS | courtroom deputy's initials | 00 MAR 24 PM 11:47  Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UAL CORP., UNITED AIRLINES, INC., AIR WIS SERVICES, INC., AIR WISCONSIN, INC., and AIR WISCONSIN AIRLINES CORP., <br><br> Plaintiffs, <br><br> v. <br><br> MESA AIRLINES, INC., <br><br> Defendant. | No. 00 C 0675 <br><br> Judge Robert W. Gettleman |

DOCKETED

MAR 27 2000

## MEMORANDUM OPINION AND ORDER

Plaintiffs UAL Corp., United Airlines, Inc., Air Wis Services, Inc., Air Wisconsin, Inc., and Air Wisconsin Airlines Corp. have filed a "Complaint For Declaratory Relief And To Enjoin Or Stay Arbitration" against defendant Mesa Airlines, Inc., seeking to enjoin an arbitration pending between those parties in Denver, Colorado. With the complaint, plaintiffs filed a motion for "preliminary and/or permanent injunctive relief or stay of arbitration." Defendant has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) or, in the alternative, to transfer the action to the District of Colorado pursuant to 28 U.S.C. § 1406(a). For the reasons set forth below, defendant's motion to dismiss is denied, but the case is transferred to the District of Colorado.

### Facts

In December 1989 defendant entered into an Agreement of Purchase and Sale of Assets with Aspen Airways Inc., ("Aspen"), a failing commuter airline operating as a United Express Carrier out of Denver, Colorado. Pursuant to the agreement, defendant paid $2.5 million for a

non-compete agreement. Aspen retained the right to fly only between Denver and Aspen, Colorado. The covenant not to compete applied to Aspen and any of its affiliates, as that term is defined by SEC Rule 144, for a period of ten years beginning on January 16, 1990, and ending on January 16, 2000. The agreement provides that its terms are "binding upon and inure to the benefit of each corporate party hereto and its successor and assigns." Any dispute or controversy arising under the agreement shall be settled by arbitration in Denver, Colorado pursuant to the rules of the American Arbitration Association ("AAA"). Judgment of the arbitrators may be entered by any court with jurisdiction and the parties expressly consented to the jurisdiction of the Colorado courts for that purpose. Additionally, the agreement provides that Colorado law applies to any dispute under the agreement.

After the transaction closed, Aspen continued to operate under its own name until mid-1990, when plaintiff Air Wis Services Inc. ("Air Wis") acquired 100% of Aspen's stock. At that time Air Wis had a wholly owned subsidiary named Air Wisconsin Inc. ("Air Wisconsin"). In 1991 Air Wisconsin merged with Aspen, with Air Wisconsin remaining as the surviving corporation. In 1992, plaintiff UAL Corp. ("UAL") purchased Air Wis and made it a wholly owned subsidiary. United Airlines was also a wholly owned subsidiary of UAL at that time. In 1993, Air Wisconsin formed Air Wisconsin Airlines Corp. ("AWAC"), which was then sold to and merged with CJT Holdings, leaving AWAC as the survivor.

AWAC currently flies as a United Express Carrier. AWAC flies numerous routes out of Denver, including many of the routes defendant had been flying after its agreement with Aspen. This, according to defendant, violates the covenant not to compete in its contract with Aspen. As

a result, on January 7, 2000, defendant filed a Demand for Arbitration with the AAA naming plaintiffs in the instant case as respondents.

Instead of responding to the arbitration demand, on February 2, 2000, plaintiffs filed the instant action seeking an order declaring that defendant's claims under the agreement are not arbitrable and enjoining or staying the arbitration.

## Discussion

Defendant has moved to dismiss the instant case for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), arguing that because the arbitration agreement calls for arbitration in Colorado, and that the arbitration plaintiffs seek to enjoin is pending in Colorado, only a Colorado district court can grant plaintiffs' requested relief. Defendant bases its argument on the specific venue provisions contained in § 4 the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. Plaintiffs counter that § 4 is inapplicable to actions seeking to enjoin or stay arbitrations, and that venue is proper under the general venue provisions of 28 U.S.C. § 1391(a).[1]

Section 4 of the FAA, 9 U.S.C. § 4 provides in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . for an order directing such arbitration proceed in the manner provided for in such agreement. . . . The hearing and proceedings, under such agreement, shall be

---

[1] The question of whether the parties have agreed to arbitrate an issue, including whether the parties have agreed to allow the arbitrators to determine if an issue is arbitrable, is to be decided by the court based on the language of the arbitration agreement. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995). Thus, a court must decide initially whether the parties have agreed to arbitrate the issue of whether defendant's claims against plaintiff are arbitrable under the agreement. The question before this court is which court is to make that initial determination.

3

within the district in which the petition for an order directing such arbitration is filed.

This provision explicitly provides for a judicial remedy where one party refuses to arbitrate a dispute. Merrill Lynch Pierce Fenner & Smith, Inc. v. Lauer, 49 F.3d 323, 327 (7th Cir. 1995). Additionally, "case law has interpreted § 4 to extend to parties whose grievance is the other party's failure to arbitrate under the terms of the arbitration agreement." Id.

Although § 4 states that an aggrieved party "may petition any United States district court," as Lauer makes clear, that broad authority is narrowed by § 4's venue provision, which mandates that the "hearings and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed."

> The directive of § 4 is mandatory. It clearly requires a geographic link between the site of the arbitration and the district which, by compelling arbitration or directing its scope, exercises preliminary control. This statute is perhaps awkwardly worded for present purposes in that the mandatory language ties the location of arbitration to the district in which the motion to compel is brought. Nonetheless, the inescapable logical import in the present situation, in which the location of arbitration is preordained, is that the statute limits the fora in which § 4 motions can be brought. [Id. at 327.]

In accordance with the construction of § 4 as a restriction of the authority of non-forum courts, the Seventh Circuit has held that where, as in the instant case, the arbitration agreement contains a forum selection clause, only the district in that forum can issue a § 4 order compelling arbitration. Snyder v. Smith, 736 F.2d 409, 419-20 (7th Cir. 1984). Therefore, only a Colorado district court can compel arbitration between the parties to the instant case. In Snyder the Seventh Circuit held that § 4 precluded a district court from ordering arbitration to take place outside of its own district, and just as clearly precluded the court from ordering arbitration to take place within its district in contravention of a freely negotiated forum selection clause. Id.; Lauer,

4

49 F.3d at 328. Clearly then, under Snyder and Lauer, the venue provisions of § 4 prevent this court from exercising preliminary control over the arbitration pending in Colorado.

Section 4 governs requests to compel arbitration, however, and plaintiffs argue that its specific venue provisions do not apply to suits to enjoin arbitration. Instead, plaintiffs argue that the general venue provisions of 28 U.S.C. § 1391(a) apply. Plaintiffs have no support for this proposition. They mischaracterize the one case they cite as "the only Court of Appeals case to address this venue issue directly." It is true that in First of Michigan Corp. v. Bramlett, 141 F.3d 260 (6th Cir. 1998), the court applied the general venue provision in § 1391(a) to a suit to enjoin an arbitration pending in another district. But contrary to plaintiffs' assertions, First of Michigan Corp. does not hold that "§ 4 does not govern motions to enjoin or stay arbitration," because that issue was not before the court. In First of Michigan Corp., the district court applied the general venue provisions and found venue lacking. The issue on appeal was whether the district court used the proper § 1391(a) standard, not whether § 1391(a) should be applied at all, or in other words, whether the specific venue provisions of § 4 trump the general venue provisions in § 1391(a). The Sixth Circuit held that the district court had applied an outdated § 1391(a) standard, but never mentioned § 4. For reasons unknown, the § 4 venue provisions were never raised. Thus, First of Michigan Corp. does not stand for the proposition that the general venue provisions of § 1391(a), rather than the specific venue provisions in § 4, applies to suits to enjoin arbitration.

The only other citation provided by plaintiffs in support of their position is a misquote from McNeal, et al., Federal Arbitration Law § 24.2.4 (1999). Plaintiffs quote the treatise as stating that "the general venue statute, 28 U.S.C. § 1391, governs a 'proceeding for an injunction

5

or declaratory judgment against arbitration.'" In fact, the proper quote from § 24.2.4 is as follows:

> Where the proceedings for an injunction or declaratory judgment against arbitration is independent of any other proceeding, the general venue provisions treated in § 24.2.3 will govern (emphasis added).

The general venue provisions treated in § 24.2.3 are the venue provisions contained in § 4. Id. at §24.2.3.

Indeed, contrary to plaintiffs' unsupported assertions, the only cases that do deal with the issue directly have held that the venue provisions of § 4 apply to independent proceedings to enjoin arbitrations.

> Even though venue may otherwise be proper in this district under 28 U.S.C.A. § 1391(a), since Prudential is seeking to direct the scope of a pending arbitration in another district, I conclude that the venue provision of § 4 is controlling.

Prudential Securities, Inc. v. Desmond, 1997 WL 570926 at *2 (E.D. Pa. Sept. 5, 1997) (citing cases); see also Bao v. Gruntal & Co., 942 F. Supp. 978 (D. N.J. 1996) (citing cases).

That these cases reach the result that § 4 controls is not surprising. The position advanced by plaintiffs would lead to an anomalous and untenable result. Under plaintiffs' theory, if this court ruled in their favor, holding that the dispute is not arbitrable, the court could enjoin the arbitration, or at least enjoin defendant from pursuing it. If, on the other hand, the court held against plaintiffs and did not enjoin the arbitration, plaintiffs could ignore this court's order and force defendant to sue plaintiffs in Colorado to compel their compliance with the demand for arbitration. This is an unacceptable. Under § 4, plaintiffs' suit to enjoin the arbitration must be heard in the District Court of Colorado, which alone has the authority to compel plaintiffs to arbitrate if appropriate, and to exercise preliminary control over the

6

arbitration. Accordingly, this court transfers this action to the District of Colorado pursuant to 28 U.S.C. § 1406(a).

### Conclusion

For the reasons set forth above, defendant's motion to dismiss is denied. Defendant's motion to transfer venue is granted. The case is transferred to the District of Colorado.

**ENTER:** **March 23, 2000**

Robert W. Gettleman
United States District Judge